1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SCOTT EVANS,

      Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

      Defendant.

Case No. 2:22-cv-00965-EJY

**ORDER**

10

11

12

13

14

15

      Plaintiff Scott Evans ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his application for disability insurance ("DIB") under Title II of the Social Security Act (the "Act"). ECF No. 21.  On October 14, 2022, the Commissioner filed a Cross-Motion to Affirm together with the Response to Plaintiff's Motion for Reversal and/or Remand.  ECF Nos. 22, 23.  For the reasons stated below, the Commissioner's decision is affirmed.

16

### I.      BACKGROUND

17

18

19

20

21

22

23

24

25

26

27

28

      Plaintiff filed an application for disability insurance benefits on October 29, 2019, alleging disability beginning on January 1, 2014.  Administrative Record ("AR") 18.  The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon reconsideration (AR 122-125, 126-130), followed by Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ"). AR 133.  The ALJ held a hearing on March 10, 2021.  AR 44.  Plaintiff was represented by counsel who amended his alleged disability onset date to September 1, 2016.  AR 54.  On May 7, 2021, the ALJ issued a decision finding Plaintiff not disabled from his amended alleged onset date through December 31, 2018, the last date Plaintiff was insured.  AR 15-17.  Plaintiff requested review of the ALJ's decision (AR 182-183), but the Appeals Council denied his request in April 2022.  AR 1-6. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g)

## II.     STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla."  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)).  In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted).  And, a court may not reverse an ALJ's decision based on a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.     DISCUSSION

### A.     <u>There is no Constitutional Barrier to the Adjudication of this Case</u>.

Plaintiff contends that because Andrew Saul was the Commissioner of Social Security at all times when decisions relevant to this case were made and Commissioner Saul's tenure was unconstitutional as he was in a position limiting the President's removal power, Commissioner Saul could not delegate decision making authority to an ALJ or Appeals Council regarding Plaintiff's benefits.  ECF No. 21-1 at 15.  Plaintiff argues Commissioner Saul's tenure violated the separation of powers thereby entitling Plaintiff to remand as a matter of law.  *Id*. at 16.  Defendant responds that Plaintiff's separation of powers argument fails for several reasons the most important of which is that Plaintiff cannot demonstrate a nexus between an action taken by an acting official removable

at will and the denial of benefits.  ECF No. 22 at 7.  The ALJ who made the decision to deny Plaintiff benefits was appointed by then-Acting Commissioner Berryhill who "enjoyed no statutory tenure protection."[1]  *Id*. at 8, n.3 *citing* 42 U.S.C. 902(b)(4) and *Collins v. Yellen*, 141 S.Ct. 1761, 1782 (2021).

The U.S. Supreme Court's decisions in *Seila Law LLC v. CFPB*, 140 S.Ct. 2183 (2020) hold that the for-cause restriction on the President's executive power to remove the single Director of the Consumer Financial Protection Bureau ("CFPB") and the Federal Housing Finance Agency ("FHFA"), respectively, violated the constitutional separation of powers.  *Seila Law*, 140 S.Ct. at 2207.  In coming to its conclusion, the Supreme Court found the petitioner had standing to bring its claim.  The Court stated: "petitioner's appellate standing is beyond dispute.  Petitioner is compelled to comply with the civil investigative demand and to provide documents it would prefer to withhold, a concrete injury.  That injury is traceable to the decision below and would be fully redressed if we were to reverse the judgment of the Court of Appeals and remand with instructions to deny the Government's petition to enforce the demand."  *Id*. at 2196.  The Supreme Court also took issue with Congress investing unilateral decision-making power in the single Director of the CFPB, insulating the Director with a for-cause removal restriction, and delineating a five-year tenure in office.  *Id.* at 2204.  The Court explained:

> Because the CFPB is headed by a single Director with a five-year term, some Presidents may not have any opportunity to shape its leadership and thereby influence its activities. … To make matters worse, the agency's single-Director structure means the President will not have the opportunity to appoint any other leaders—such as a chair or fellow members of a Commission or Board—who can serve as a check on the Director's authority and help bring the agency in line with the President's preferred policies.

*Id.*

In *Collins*, the Supreme Court similarly found the structure of the FHFA unconstitutional for "concentrating power in a unilateral actor insulated from Presidential control."  *Collins*, 141 S.Ct. at 1784.  The *Collins* decision, which the Ninth Circuit considers "controlling with respect to the

---

[1]    Nancy A. Berryhill served as Acting Commissioner of Social Security from January 21, 2017 to June 17, 2019, when she was replaced by Commissioner Saul.  SOCIAL SECURITY, https://www.ssa.gov/history/commiss.html (last visited March 3, 2023).  The presiding ALJ in this case, Barry Jenkins, was appointed in July 2018, during the tenure of Acting Commissioner Berryhill.

remedy for any unconstitutionality in the removal provisions,"[2] emphasized that the unconstitutional leadership structure of the FHFA did not automatically render the agency's decisions void.  *Id.* at 1787.   The Court noted that while the *removal* provision at issue was unconstitutional, the appointment of each director to the FHFA was sound, and thus there was "no reason to regard any of the actions taken by the FHFA … as void." *Id.*

Here, it is uncontroverted that, unlike *Seila Law*, the ALJ who made the decision denying Plaintiff's benefits was not appointed by a Commissioner of Social Security who was subject to removal restrictions under 42 U.S.C. 902(b)(4).   Instead, the ALJ who made the decision in Plaintiff's case was appointed by an Acting Commissioner of Social Security—Nancy A. Berryhill—who could be removed at will by the President.  Thus, Plaintiff's constitutional argument arising from the limitation on removal of the Commissioner of Social Security fails.

Further, even if the above was insufficient to deny Plaintiff's Motion for Remand, Plaintiff's Motion fails because he cannot establish a nexus between the alleged unconstitutional limitation on removal of the agency head and the denial of his benefits.  To establish Article III standing, Plaintiff must show that he suffered an "injury in fact" that is "fairly traceable" to the defendant's conduct and would likely be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (alterations and internal quotation marks omitted).   "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged."  *Collins*, 141 S.Ct. at 1779 *citing Allen v. Wright*, 468 U.S. 737, 751 (1984) and *Lujan*, 504 U.S. at 560 (explaining that the plaintiff must show "a causal connection between the injury and the conduct complained of," and that "the injury has to be fairly traceable to the challenged action of the defendant" (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41 (1976).

In this case, Plaintiff does not allege facts that support a finding that his injury, the denial of disability benefits, can be or is traced to the conduct of the SSA Commissioner.  Plaintiff alleges no facts suggesting that when the ALJ denied his claim for Social Security benefits, the then-SSA Commissioner played any role whatsoever in that decision.  Unlike the Director of the CFPB who

---

[2]     *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021).

was directly involved in decisions that impacted and caused alleged injury to Seila Law, Plaintiff does not allege the Commissioner took any action that is in any way related to the ALJ's decision. In fact, it is well settled that each ALJ must "exercise[] his independent judgment on the evidence before him …." *Brennan v. Department of Health & Human Servs.*, 787 F.2d 1559, 1562 n.1 (Fed. Cir. 1986) (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)).  Because Plaintiff offers nothing that traces the decision by the ALJ in his case to any alleged injurious conduct by the Commissioner, he has not demonstrated traceability and his constitutional violation claim also fails for lack of standing.  *Seila Law*, 140 S.Ct. at 2196; *Collins*, 141 S.Ct. at 1779.  Accordingly, the Court denies remand on the basis of Plaintiff's alleged constitutional violation.

**B.**     **Establishing Disability Under the Act**.

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> 1. the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

> 2. the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A).  "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a).  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520.  The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps consider:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits.  If the claimant is not working in

a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

**C.**   **Summary of ALJ findings**.

At step one, the ALJ found Plaintiff last met the insured status required by the Social Security Act through December 31, 2018, and had not engaged in substantial gainful activity from the amended alleged onset date of September 1, 2016 through his date last insured of December 31, 2018. AR 20. At step two, the ALJ found Plaintiff suffered from the following severe impairments: "right eye blindness stemming from congenital glaucoma (with enucleation done during adulthood)[,] obesity as a secondary factor under SSR 19-2p, and disorder of the cervical spine/left hip. (20 CFR 404.1520(c))." AR 20. Notably, the ALJ did not find Plaintiff's mental impairments rose to the level of "severe" for purposes of step two. AR 21. After a discussion of Plaintiff's medically determinable impairments, the ALJ found, at step three, that Plaintiff's impairments did

not meet or equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 20-21.

In preparation for step four, the ALJ determined Plaintiff had the Residual Functional Capacity ("RFC") to:

> perform "medium" work. 20 CFR 404.1567(c).  He could lift and carry no more than twenty-five pounds, frequently, and fifty pounds, occasionally.  He could sit for six hours, cumulatively, in an eight-hour workday.  He could stand and/or walk for six hours, cumulatively, in an eight-hour workday.  He could frequently but not continuously climb, stoop, kneel, crouch, crawl, and balance.  He could not do jobs that required binocular or right peripheral vision.  He had to avoid concentrated exposure to excessive heat and cold.  He had to avoid concentrated exposure to hazards, such as hazardous machinery, unprotected heights, and operational control of moving machinery.

AR 22.  At step four, the ALJ determined Plaintiff, through the date he was last insured, could perform his past relevant work as a Vice President of Marketing.  AR 35.  This finding obviated the need for the ALJ to proceed to step five.  Nevertheless, the ALJ found, based on Plaintiff's age (an individual of advanced age), education, work experience, transferable skills, and RFC, jobs exist in significant numbers in the national economy that Plaintiff could perform.  AR 36.  The ALJ concluded Plaintiff has not been under a disability, as defined by the Social Security Act, at any time from September 1, 2016, the alleged onset date, through December 31, 2018, the date last insured.  AR 38.

**D.    Plaintiff's Claims**.

1.    Plaintiff Asserts the ALJ's RFC Assessment is not Supported by Substantial Evidence.

A.    The ALJ Improperly Discounted the Opinions of Dr. Warren Magnus.

Plaintiff alleges the ALJ failed to adequately support his finding that the medical opinions of Plaintiff's treating physician, Dr. Warren Magnus, were unpersuasive.  ECF No. 21-1 at 9.  Plaintiff accuses the ALJ of "cherry picking" from Dr. Magnus' progress notes in order to bolster the ALJ's conclusion that Dr. Magnus' medical opinions were unsupported.  *Id.*  Plaintiff points to evidence in the administrative record of Plaintiff's suffering from pain and irritation caused by his prosthetic right eye, congenital right eye glaucoma, and headaches.  *Id. citing* AR 414, 419, 436, 557, 571, 575, 625, 626, 637, 638, 647, 662, 732, 733, 741, 748, 773.  Further, Plaintiff points to Dr. Magnus' notes

describing the results of a November 2018 physical exam in which Plaintiff exhibited tenderness over the bilateral paracervical muscle groups and bilateral facet columns, decreased range of motion of the cervical spine, and concordant pain with facet loading.  *Id. citing* AR 775.  Plaintiff contends despite this trove of medical evidence supporting Dr. Magnus' medical opinion, the ALJ improperly dismissed his opinion as unpersuasive.  *Id.*

> **B.**   *Plaintiff Says the ALJ Improperly Substituted His Own Conclusions About the Limits of Plaintiff's Physical Abilities.*

Plaintiff argues that because each prior Disability Determination Services ("DDS") evaluation of Plaintiff found insufficient evidence to make any physical findings, Dr. Magnus is the only medical opinion of record describing Plaintiff's physical impairments.  *Id.* at 9-10 *citing* AR 98, 109-110.  As a result, Plaintiff argues the ALJ impermissibly substituted his lay opinion for the competent medical opinion of Dr. Magnus.  *Id.* at 10.

> **C.**   *According to Plaintiff, the ALJ Improperly Evaluated His Chronic Pain.*

Plaintiff questions the ALJ's purported consideration of Plaintiff's allegations of chronic pain noting that, in finding the allegations unsupported, the ALJ cited Plaintiff treating his conditions only with medication management and conservative care.  *Id.* at 10-11 *citing* AR 35.  Plaintiff disputes the ALJ's assertion that the lack of imaging or diagnostic evidence does not support Plaintiff's claims, pointing out Plaintiff suffers from a degenerative condition stemming from his eye removal and chronic headaches, which calls into question what any diagnostic test would reveal for the benefit of the ALJ's analysis.  *Id.* at 11 *citing* AR 35.  Plaintiff also contends the ALJ's findings that Plaintiff was oriented throughout the record and denied experiencing side effects from his medications are belied by contrary record evidence.  *Id. citing* AR 34.  Plaintiff references the report describing Plaintiff sleeping fourteen hours a day along with Plaintiff's mistrust of health care providers that may have resulted in a lack of total candor with the Advanced Practice Registered Nurse ("APRN") regarding symptoms from his medication.  *Id. citing* AR 597-98.

Plaintiff takes issue with the ALJ's apparent discounting the specialization of and time spent by Dr. Magnus with Plaintiff.  *Id. citing* AR 792.  Plaintiff asserts Dr. Magnus' personal experience with Plaintiff should weigh in favor of accepting his medical opinions as persuasive.  *Id.* at 12.

2. <u>Plaintiff Argues the ALJ Erred by Excluding Plaintiff's Mental Health Conditions as a Severe Impairment and, Therefore, Erred when the RFC Failed to Reflect the Resulting Practical Implications</u>.

Plaintiff alleges the ALJ erred in finding Plaintiff's anxiety and affective mood disorder were not severe. *Id.* Plaintiff asserts the medical record belies this finding by the ALJ. *Id.* Plaintiff lists evidence of mental health conditions, including a diagnosis of depression and documented symptoms such as fatigue, low energy, excessive and difficulty sleeping, as well as malaise. *Id.* at 13 *citing* AR 414, 419, 422, 583, 594, 597, 646, 648, 662, 671, 672, 699, 714, 749. Plaintiff also points to the evidence in the record of the types of medications he was taking including two antidepressants at maximum dose, benzodiazepine, and opiates. *Id. citing* AR 598. Plaintiff avers that the combination of his symptoms, medications, and documented chronic pain are all evidence of more than a slight abnormality in his life. *Id.* Further, Plaintiff was diagnosed with recurrent major depressive disorder. *Id. citing* AR 415, 422, 595, 597-98, 640-41, 666-67, 675, 687-88, 703-04, 717-18. As the diagnosis was made by competent medical professionals, Plaintiff argues this too should establish more than a "de minimus" effect on Plaintiff's life. *Id.* at 13-14.

Plaintiff asserts the aforementioned medical factors represent more than a slight abnormality or minimal effect on Plaintiff's ability to do work related activities. *Id.* at 14. Because Plaintiff's medical impairments are severe, Plaintiff accuses the ALJ of misinterpreting both the applicable law and relevant facts and concludes the ALJ's decision was not supported by substantial evidence. *Id.*

**E.    The Commissioner's Response**.

1.    <u>The Commissioner Argues Substantial Evidence Supports the ALJ's RFC Finding</u>.

The Commissioner states that the ALJ adhered to the applicable Social Security regulations when he "properly articulated why he found [Dr. Magnus'] opinion unpersuasive." ECF No. 22 at 16-17 *citing* AR 30, 557-61. The Commissioner recaps the January 2021 consultation Plaintiff had with Dr. Magnus and proceeds to list the—according to the Commissioner—accurate reasons why the ALJ deemed Dr. Magnus' opinion unpersuasive. *Id.* at 17.[3]

---

[3]       "Dr. Magnus checked that Plaintiff would miss 4+ days of work per month and be off task >25% of the workday. Dr. Magnus checked that Plaintiff could maintain attention and concentration for <30 minutes before requiring a break. He could lift 10 pounds frequently and 20 pounds occasionally but carry less than 10 pounds frequently and 10 pounds

First, the Commissioner argues that after a thorough review of the medical evidence, *citing* AR 23-30, the ALJ found discrepancies between Dr. Magnus' September 2018 treatment notes and his medical opinions recorded in December 2018. *Id.* at 17-18 *citing* AR 745, 559. The Commissioner contends these contradictory findings occurred between September 1, 2016 and December 31, 2018, which was the statutory period in which Plaintiff was required to demonstrate his disability. *Id.* The Commissioner notes numerous consultations with Dr. Magnus in which the doctor found Plaintiff had "normal" attention and concentration and in which Plaintiff denied having muscle pain and joint aches, which is in contrast to Dr. Magnus' opinion that Plaintiff had extreme limitations. *Id.* at 18 *citing* AR 31, 629, 650, 666, 687, 703, 717, 727, 736, 745, 752, 761. The Commissioner questions Dr. Magnus' repeated findings that Plaintiff suffered extreme limitations when there was an abundance of evidence demonstrating normal medical findings. *Id. citing id.* Based on these comparisons, the Commissioner argues the ALJ was well within his legal authority to discount Dr. Magnus' medical opinion. *Id.* at 18-19.

The Commissioner also addresses the inconsistencies between Dr. Magnus' opinion of severe limitations and those of other medical practitioners. *Id.* at 19. The Commissioner cites evidence in the record describing consultations with Dr. Jerry Cade,[4] Dr. Lacy Puttuck,[5] and Dr. Anna Harutyunyan,[6] each of whom opined on Plaintiff's health after observing him. *Id.* The ALJ cited these instances of positive medical reports of Plaintiff's physical condition as support for the ALJ's determination that the level of limitations presented in Dr. Magnus' opinion—being able to only stand or walk for two out of eight hours per work day[7]—were not warranted. *Id.* The Commissioner cites to treatment notes of Dr. W. Reed Jaussi,[8] Dr. Leon Perel,[9] and Dr. Jessica

---

occasionally. He could sit for six hours and stand or walk for two hours out of an eight-hour workday. He required an at-will sit/stand option and would have to lie down for up to two hours two to three times per day in an eight-hour workday and had other postural and environmental limitations." ECF No. 22 at 17 *citing* AR 792-95.

[4]    *See* AR 412-18 (finding Plaintiff to be "in no distress").

[5]    *See* AR 412 (finding Plaintiff able to walk his dog for "about an hour a day").

[6]    *See* AR 414 (observing normal gait and negative x-ray results).

[7]    AR 793.

[8]    AR 436-37 (concluding pain management and ointment had provided Plaintiff "relief" and that Plaintiff had "no complaints" with reading or distance vision).

[9]    AR 773-76 (finding Plaintiff had "75% pain relief" on his current medications).

Knirk,[10] who opined on the level of chronic pain experienced by Plaintiff, each of whom found no signs of abnormal pain suffered by Plaintiff. *Id.* at 19-20. The Commissioner argues the discrepancies between the medical conclusions reached by these health care providers differs significantly from Dr. Magnus' medical conclusions such that there is strong evidence supporting the Commissioner's finding Dr. Magnus' opinion was unpersuasive. *Id.* at 19-20.

The Commissioner further contends Plaintiff's failure to follow up with pain management except on one occasion (indicating his pain was well managed), the absence of any surgery or hospitalization, the apparent favorable response to medication, and Plaintiff's description of himself as "recently retired" offer additional support for the ALJ's finding that Plaintiff is not entitled to benefits. *Id.* at 21 *citing* AR 31, 559, 594, 597, 756. The Commissioner reminds the Court it is the ALJ's role to determine the RFC based on the overall record, not based on one physician's medical opinion. *Id.* at 22 *citing* 20 C.F.R. §§ 404.1545(a)(3), 1546(c); *Rounds v. Commissioner Social Security Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). The Commissioner argues the ALJ acknowledged Plaintiff has some limitations affecting his daily life. *Id.* at 24 *citing* AR 22. As part of that acknowledgment, the ALJ provided RFC limitations reducing Plaintiff's workload to medium, attaching postural and environmental limitations, and preclusions from jobs requiring binocular or right peripheral vision. *Id. citing* AR 22. The Commissioner requests the Court uphold the ALJ's RFC analysis on the grounds that it is supported by substantial evidence. *Id.*

2.   <u>The Commissioner Argues the ALJ Properly Evaluated Plaintiff's Mental Impairments Finding They Did Not Limit His Ability to Perform His Past Relevant Work</u>.

The Commissioner argues the ALJ reasonably found at step two of his RFC evaluation Plaintiff did not have a severe mental impairment. *Id. citing* AR 20-21. The Commissioner states the burden of demonstrating a mental impairment is severe falls on the proponent, and the burden was not met here. *Id.* at 24 *citing Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). The Commissioner cites evidence demonstrating the ALJ used the legally required technique for

---

[10]   AR 560 (recording Plaintiff as having "normal" gait and "good" bilateral arm swing, able to get up from a "low chair" without using assistance," full 5/5 strength, and "no atrophy").

evaluating mental health impairments and properly found Plaintiff's impairment not severe.  *Id.* at 25 *citing* AR 21.

The record to which the Commissioner cites shows Plaintiff admitted in 2017 that his depression was being "controlled with medication," and during the period in which Plaintiff was required to demonstrate disability he presented with "normal" attention span, normal concentration, and "intact" attention and memory.  *Id.* at 25 *citing* AR 419, 559, 745.  The Commissioner takes issue with Plaintiff's recitation of medical examinations in which he "presented as tired, depressed and with a worried mood, and irritated affect," pointing out the exams on which Plaintiff relies took place on December 19, 2019 and January 13, 2020, which were after the period in which Plaintiff was required to demonstrate disability.  *Id.* at 26 *citing* AR 422, 594, 597.  The Commissioner repeats his assertion that the ALJ has substantial evidence supporting his finding that Plaintiff displayed normal mental status before and after the relevant time period.  *Id. citing* AR 559, 629, 650, 666, 687, 703, 717, 727, 745.

The Commissioner dismisses Plaintiff's claims regarding various treatments that may or may not have contributed to his depression, fatigue, and lethargy.  *Id.*  The Commissioner cites to APRN Sean Elder's notes that were for treatment received during the same appointments on December 19, 2019 and January 13, 2020, an entire year after the date upon which Plaintiff had to establish disability stating these are outside what can be considered for determining disability.  *Id. citing* AR 595, 598.  Regardless of the inapplicability of the consultations with Mr. Elder due to timeliness, the Commissioner describes how Plaintiff's interactions with Mr. Elder (Plaintiff refused to alter his dosage of Xanax when recommended) are contrary to Plaintiff's claim of severe mental disability.  *Id.* at 26-27 *citing* AR 595.  The Commissioner concludes the ALJ was reasonable in determining that while Plaintiff had mental health impairments, they were not severe.  *Id.* at 27.

**F.   Analysis**

1.   The ALJ's RFC Calculation was Supported by Substantial Record Evidence.

An RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate."  SSR 96-8p, 61 Fed. Reg. at 34478.  To the

extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC.  20 C.F.R. § 404.1546(c); *Rounds*, 807 F.3d at 1006 (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

The ALJ's findings of fact, as embodied in the RFC, are conclusive if supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Ukolov*, 420 F.3d at 1002.  When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation.  *See Burch*, 400 F.3d at 679.  Consequently, the issue before the Court is not whether the ALJ could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

Here, the ALJ summarized Plaintiff's alleged limitations arising from HIV, hypertension, right eye glaucoma, right eye prosthetic, headaches, generalized anxiety disorder, major depressive disorder, medication side effects causing drowsiness, low energy, low mood, and rheumatoid arthritis of the knees, hips, and wrist.  AR 23 *citing* exhibits and Plaintiff's hearing testimony. Further, the ALJ recapped Plaintiff's testimony of his typical activities, which include "watching the news, doing some chores, walking his dog for 1 hour, sleeping 6 to 7 hours at night, and sleeping 8 hours per day."  *Id.*  Plaintiff also typically flies to Utah to see his family, shops and prepares meals, and is able to lift between 20 to 40 pounds.  *Id.*

The ALJ summarized the medical record in the case for the period beginning in February 2009 and ending in December 2020.  *Id.* at 23-30.  The ALJ notes Plaintiff's anophthalmos condition of the right eye and that prescribed medication stabilized the condition and irritation stemming from the right eye prosthetic.  *Id.* at 23.  The ALJ further notes a March 2017 visit to Plaintiff's primary care physician, Dr. Harutyunyan, in which Plaintiff claimed to suffer from mental health problems, but the condition was controlled through medication.  *Id.* at 24 *citing* AR 419-422.  ("Objectively, he had a cooperative demeanor, no acute distress, intact alertness/orientation, normal gait, normal skin signs, benign abdomen, clear breathing sounds, regular heart rate/rhythm, normal extremities, normal cervical signs, and normal ENT signs.").  An additional visit to Dr. Harutyunyan in

September 2017 is summarized by the ALJ in which Plaintiff complained of knee pain; several of his medications were refilled, and Plaintiff received advice to adhere to a healthy diet and refrain from alcohol use.  *Id. citing* AR 414.

The ALJ cited an October 2017 visit to eye specialist Dr. W. Reed Jaussi in which the doctor referenced Plaintiff's congenital right eye glaucoma and Plaintiff's complaints of mild prosthetic irritation for the past fifteen years.  *Id.* at 25 *citing* AR 436.  Next, after summarizing two physicians visits in late 2017 and early 2018 discussing non-eye related medical issues, the ALJ cites to Plaintiff's July 2018 visit to a primary care facility under the supervision of Dr. Magnus.  *Id.* at 26 *citing* AR 756.[11]  The ALJ refers to the records from an August 2018 visit in which Plaintiff stated to Dr. Magnus that he was doing "pretty well," and Dr. Magnus' finding there were no signs of deterioration in Plaintiff's health since the July 2018 consultation.  *Id. citing* AR 748-754.

In September 2018 Plaintiff saw Dr. Magnus again, this time blaming inconsistent compliance with taking prescribed medications on the pharmacy while also asking for a referral to pain management.  *Id. citing* AR 741.  Dr. Magnus found no sign of deterioration and Plaintiff was "in no acute distress."  *Id. citing* AR 744.  In November 2018 Plaintiff consulted with Dr. Leon Perel, a pain management doctor, regarding "right-sided facial pain traveling to the neck in an occipital distribution and headaches."  *Id. citing* AR 773.  At his appointment with Dr. Perel, Plaintiff claimed 75% pain relief from the medications he was currently taking along with experiencing zero side effects, indicating a favorable response.  *Id. citing* AR 773.  Plaintiff followed up with Dr. Magnus in December 2018 for medication refills.  *Id*. at 27 *citing* AR 732.  The record of that visit reflected no signs Plaintiff had medically deteriorated.  *Id. citing* AR 735.

In late December 2018 Plaintiff visited a neurologist, Dr. Jessica Knirk, complaining of a chronic migraine and cervicalgia.  *Id. citing* AR 557.  Plaintiff reported to Dr. Knirk that he suffered nausea as a result of severe headaches, but the headaches were controlled with the proper dosage of

---

[11]   During his initial examination at AHF Healthcare Center, Plaintiff was asked several questions regarding his medical status.  "He denied any eye irritation, eye pain, blurred vision, fatigue, malaise, weight loss, fevers, headaches, imbalance, excessive daytime sleeping, weakness, anxiety, or depression…. [Dr. Magnus] noted a well-developed appearance, no acute distress, right eye prosthetic, normal skin signs, no sign of mouth lesion, clear breathing sounds, regular heart rate/rhythm, normal cervical signs, normal musculoskeletal signs, normal sensation, and no sign of focal neurological deficit.  He noted … the claimant was HIV positive, but asymptomatic, without any sign of AIDS."  AR 26 *citing* AR 758-59.

certain medications.  *Id. citing* AR 557-58.  Other than the reported pain from the headaches, Dr. Knirk reported Plaintiff displayed no signs of immediate medical concern.  *Id. citing* AR 559.

The ALJ also addressed the medical record subsequent to Plaintiff's date last insured.  *Id.*  The ALJ recaps primary care notes from May 2019 in which Plaintiff reported daily headaches, but his objective exam appeared normal physically and mentally.  *Id.* at 28 *citing* AR 723-727.  In Plaintiff's final visit with Dr. Knirk in May 2019, Plaintiff reported that his Topamax medication did not help with headaches, causing Dr. Knirk to conclude that Plaintiff likely suffered from chronic pain, not migraines.  *Id. citing* AR 575.  Again, Dr. Knirk reported Plaintiff showed normal clinical signs.  *Id. citing* 577.  At a visit to Dr. Magnus in September 2019, Plaintiff, after reporting normal physical and mental exam results, asked for a refill of Topamax as it provided him relief.  *Id. citing* AR 713.  The ALJ found this request contradicted Plaintiff's previous report to Dr. Knirk stating Topamax did not help with his headaches.  *Id.*  The ALJ reviewed a November 2019 visit to a medical facility in which Plaintiff complained of depression, anxiety, and hallucinations; and denied mania, panic attacks, or paranoia.  *Id. citing* AR 583.  At that visit, Plaintiff again displayed mostly normal clinical signs.  *Id. citing* 583-84.

In December 2019 and January 2020 Plaintiff met with APRN Elder who documented numerous inconsistencies in Plaintiff's descriptions of his health and medical history.  *Id.* at 28-29 *citing* AR 594.[12]  The ALJ described APRN Elder's suggestions to Plaintiff that he alter his medication plan; however, there is no evidence that Plaintiff acted on these suggestions.  *Id. citing* AR 594.  The ALJ also notes Plaintiff did not show up to some of his medical appointments that were to address his alleged struggles with mental health.  *Id.* at 29 *citing* AR 592.  At a March 2020 visit with Dr. Magnus, Plaintiff stated he felt well and his medical exams resulted in no concerning findings.  *Id.* at 29-30 *citing* AR 683-687.  The ALJ notes this pattern repeated on subsequent primary care visits in June, July, August, September, and December 2020.  *Id.* at 30.

---

[12]    The ALJ summarized APRN Elder's observations that in January 2020, during Plaintiff's second consultation with Elder, Plaintiff stated that he had a "very good" life while, during his appointment in December 2019 Plaintiff complained of lifelong depression.  AR 29 *citing* AR 594.  The ALJ also documented Elder's questioning why, if Plaintiff had dealt with depression over the course of his life, had he brought in assessments done at least twenty years ago and why Plaintiff was vague at times when Mr. Elder attempted to recount his mental health history.  *Id.*

1    The ALJ addresses the medical opinions by various professionals who interacted with

2    Plaintiff.  First, the ALJ describes the January 2021 medical statement completed by Dr. Magnus[13]

3    the ALJ found unpersuasive based on a lack of evidentiary support.  *Id.*  The ALJ criticizes Dr.

4    Magnus' findings as in contradiction to the doctor's progress notes regarding Plaintiff's medical

5    condition.  *Id.* at 30-31.  The ALJ discusses previous administrative findings by Drs. Ana Olivares,

6    Phaedra Caruso-Radin, Jon Arnow, and H. Pham, finding these opinions limited in persuasiveness

7    due to the ALJ's current access to a more complete and updated administrative record.  *Id.* at 31-33.

8    With respect to Plaintiff's arguments that the ALJ did not assign adequate weight to Dr.

9    Magnus' findings, controlling case law establishes that for cases filed on or after March 27, 2017,

10   courts are not to consider medical opinions in a particular case according to any kind of absolute

11   hierarchy.  *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022).  Plaintiff's case was filed on

12   October 29, 2019; therefore, the medical opinions offered must be viewed under current regulations

13   requiring the ALJ to consider "supportability" and "consistency" as the main factors in determining

14   persuasiveness of medical opinions and findings.  20 C.F.R. § 404.1520c(2).[14]

15   The ALJ acknowledges the various findings made by Dr. Magnus in his Treating Source

16   Statement and explains in detail why he finds them unpersuasive.  AR at 30-31 *citing* AR at 792-96.

17   While Plaintiff references reports arising from consultations with medical professionals in which

18   Plaintiff complains of various debilitations (such as pain from his right eye prosthesis, congenital

---

[13]    The six-page form completed by Dr. Magnus states the following: Plaintiff "would miss 4+ days of work per month and be off task >25% of the workday… [Plaintiff] is able to maintain attention and concentration for <30 minutes before requiring a break. He is able to lift up to 10 pounds, frequently, 20 pounds, occasionally, and 50 pounds, rarely. His able to carry <10 pounds, frequently, 10 pounds, occasionally, and 20 pounds, rarely. He requires an at will sit/stand option.  He is able to sit for 6 hours, cumulatively, in an 8-hour workday.  He is able to stand/walk for 2 hours, cumulatively, in an 8-hour workday.  He needs to lie down 2 to 3 hours during an 8- hour workday for 1-2 hours at a time.  He is frequently able to reach, handle, finger, feel, operate foot controls, push, and pull, bilaterally.  He is able to balance continuously.  He is able to frequently stoop, crawl, rotate his head/neck, and climb stairs/ramps.  He is occasionally able to kneel and climb ladders/scaffolds.  His is rarely able to crouch.  He is frequently able to work at unprotected heights and around dust, odors, fumes, and pulmonary irritants.  He is occasionally able to work around moving mechanical parts and in extreme heat, humidity, and wetness.  He is rarely able to work in extreme cold, around vibrations, or operate a vehicle." *Id.* at 30 *citing id.* 792-96.

[14]    "Supportability" is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s) the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* at (c)(2).

16

glaucoma, and headaches), the ALJ cites record evidence from medical professionals, including Dr. Magnus, that are to the contrary (objective findings that Plaintiff displayed normal clinical test results and observation).  ECF Nos. 21-1 at 9; AR 23-29.  These references include: a September 2017 visit to Dr. Harutyunyan (to whom Plaintiff remarked that he walked his dog for an hour a day); an October 2017 visit to Dr. Jaussi (to whom Plaintiff denied having any difficulty reading or with distance vision of his non-affected eye); a December 2017 visit to Dr. Chaorui Tian (who noted no physical symptoms of pain or discomfort); a July 2018 visit to Dr. Magnus (who noted no visible signs of concern and to whom Plaintiff reported as doing "pretty well"); a December 2018 visit to Dr. Knirk (who noted Plaintiff appeared well-developed and in no distress); and a January 2020 visit to APRN Elder (who observed Plaintiff as leading his normal daily life and activities).  AR 24-29.

It is the role of the ALJ to provide a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings ... The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Khan v. Saul*, 855 Fed.Appx. 343, 345 (9th Cir. 2021) (internal quotation marks and citations omitted).  The Court finds, based on all the evidence considered by the ALJ, the ALJ did not err when determining Dr. Magnus' report was unpersuasive.  There is substantial evidence in the record to support the ALJ's conclusion. *Castillo v. Saul*, 850 Fed.Appx. 482, 484 (9th Cir. 2021) ("The ALJ provided specific, clear and convincing reasons for discounting … [Plaintiff's] testimony about the severity of her symptoms, including conflicting objective medical evidence….").  It is not the role of the Court to second guess the decision of the ALJ as he weighed the conflicting evidence presented to him. *Id.* at 30-31.[15]

These same principles apply to Plaintiff's argument that the ALJ did not adequately consider the chronic pain alleged to be a key part of Plaintiff's disability claim.  ECF No. 21-1 at 11.  Upon review, the ALJ's summary of Plaintiff's consultations with medical professionals recites several

---

[15]    The Court disagrees with Plaintiff's contention that the ALJ "is substituting his own conclusions about the physical capabilities of the Plaintiff, as there are no prior agency decisions related to the Plaintiff's physical conditions." ECF No. 21-1 at 9.  ALJs are tasked by the Social Security regulations to render the decision on a claimant's RFC.  20 C.F.R. § 404.1545(a)(3); *Rounds*, 807 F.3d at 1006.  As referenced, the ALJ examined the medical opinion of Dr. Magnus, compared it with other medical evidence—including some contradictory material from Dr. Magnus—and rendered a decision on claimant's RFC.

1   instances of Plaintiff's doctors' visits resulting in reports that Plaintiff appeared to be in no distress.

2   AR 24-29.  The ALJ also took into account the seeming discrepancy in Plaintiff's conversations with

3   Dr. Knirk and Dr. Magnus regarding the positive or neutral effect Topamax had with respect to

4   Plaintiff's migraine headaches.  *Id.* at 28.

5          An ALJ may consider inconsistencies between Plaintiff's statements regarding pain and the

6   objective medical evidence.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  In analyzing Plaintiff's

7   medical records that show no reported pain on numerous occasions, in conjunction with Plaintiff's

8   inconsistent and ambiguous statements concerning his level of pain and responses to medication, the

9   ALJ was within his discretion in determining that Plaintiff's claim of chronic pain would not weigh

10  heavily on his RFC determination.

11         The ALJ concluded:

12         The claimant had no limitation in concentrating, persisting, or maintaining pace,
           because he could function independently, appropriately, and effectively in this area
13         on a sustained basis, through the DLI. Per testimony, he drove to visit his family in
           Utah prior to the expiration of the DLI, indicative of sustained attention and the
14         ability to engage in defensive driving.  He completed a 4-year college degree, per
           testimony. He performed skilled work for years as a Vice President of Marketing,
15         as categorized by the vocational expert.  He told treating providers that he had
           retired from that work.  He manages his own finances.  He is able to initiate tasks,
16         avoid distractions, and complete them.  His writing skills appear solid on intake
           documents.  Progress notes reflect easy recall of multiple reported symptoms.  He
17         repeatedly demonstrated normal attention, normal concentration, intact orientation,
           and intact alertness during office visits, indicative of generally sufficient
18         concentration.  Overall, his educational history, skilled work history, and collective
           mental status exams suggested no limitation in concentrating, persisting, or
19         maintaining pace, through the DLI.

20                                              ***

21         A review of the entire record reveals that there is not any impairment, singularly or
           in combination, that reasonably substantiates a conclusion of disability by the
22         objective records.  For the medications that the claimant does use, the record
           reflects generally that those side effects are minimal and would not have interfered
23         with his ability to perform work activities in any significant manner, following
           some trials.  The claimant appeared alert and oriented throughout the record,
24         contrary to Dr. Magnus' statements of drowsiness as a medication side effect.  The
           record also repeatedly reflects that the claimant denied any medication side effects,
25         contrary to Dr. Magnus' statements, which appear to be directly refuted by virtually
           every aspect of the medical record.
26
                                               ***
27
           Although his impairments may reasonably be expected to cause occasional
28         limitations, the intensity he alleged, and their impact on his functioning, are simply

                                              18

not supported by the totality of evidence.  These factors, coupled with his greatly unremarkable objective findings, ability to drive/fly to visit family members, absence of any surgical intervention during the relevant period, and helpful medications, indicate that he was not disabled, from the alleged onset date, through the DLI.

AR 32-35.  The Court finds the ALJ's RFC was supported by substantial evidence, the ALJ did not "cherry pick" data from the medical record to arrive at his conclusion, and the ALJ considered the record in its totality as he is required to do.  42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record].");  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that the court may not affirm where the ALJ "picked out a few isolated instances of improvement" to support the denial of benefits).

Plaintiff does not overcome the deferential substantial evidence standard.  If the record reasonably "support[s] either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner."  *Lizer v. Berryhill*, 363 F. Supp. 3d 1097, 1099 (N.D. Cal. 2019).  As discussed fully above, the Court finds the ALJ's RFC was supported by substantial evidence.  As such, the Court upholds the Commissioner's decision and denies Plaintiff's Motion for Reversal and Remand.

2.    The ALJ Properly Concluded Plaintiff's Mental Impairments Were Not Severe for Purposes of Calculating Plaintiff's RFC.

Plaintiff argues the ALJ (1) erred by excluding Plaintiff's mental health condition as a severe medically determinable impairment, and (2) further erred by not incorporating into his RFC analysis the practical limitations of Plaintiff's mental impairment.  ECF No. 21-1 at 12.  Plaintiff says the ALJ ignored Plaintiff's diagnosis of major depressive disorder by Dr. Harutyunyan in March 2017, and subsequent mentions of symptoms of depression at various medical consultations.  *Id.* at 13, *citing* AR 422, 414, 419, 583, 594, 597, 646, 648, 662, 671, 672, 699, 714, and 749.

At step two of the ALJ's evaluation of a claimant's case, "the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005), *citing* 20 C.F.R. 404.1520(a)(4)(ii).  An impairment may be found to be "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to

work.  *Id.*  The ALJ's step-two inquiry is "a de minimis screening device to dispose of groundless claims" and any finding that a claimant's impairment is not severe must be "clearly established by medical evidence."  *Id.* at 687. (internal citations omitted).

Under 20 C.F.R. § 404.1520a(b), there is a "special technique" that is to be used by ALJs in (1) determining whether a claimant has a mental impairment and (2) if so, rating the degree of functional limitation imposed by the condition as either "[n]one, mild, moderate, marked, and extreme. § 404.1520a(b)(2)-(c).  A number of factors are to be considered in this analysis, including "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment."  § 404.1520a(c).   Under the regulations' rating scheme, if an ALJ determines a claimant has a mental impairment and classifies the limitations of that impairment as either "none" or "mild," the impairment will be treated as "non-severe."  § 404.1520a(d)(1).

A diagnosis of depression does not automatically entitle a claimant to a finding of a severe mental impairment.  *Young v. Heckler*, 803 F.2d 963, 967 (9th Cir. 1986) (holding that it is the role of the ALJ to weigh a diagnosis of depression against objective evidence in the record that the diagnosis and underlying condition did not disable claimant from performing past relevant work).

While it is true the ALJ did not directly address Plaintiff's diagnosis of major depressive disorder in his step two analysis, that alone is not enough to render his findings unsupported by substantial evidence.  *See id.*  The ALJ provided a thorough discussion of and reasons for rejecting Plaintiff's argument that he bore a severe mental impairment during the requisite time period.  AR 21.  The ALJ acknowledged Plaintiff's anxiety and affective mood disorder but stated that the conditions did not impact Plaintiff's basic mental work activities.  *Id.* Because Plaintiff's mental impairments caused no impact to the relevant functional areas, and the evidence indicated no more than a minimal impact on his basic work activities, the ALJ concluded the mental conditions were non-severe through the date last insured.  *Id.*  In addition, the ALJ pointed to a lack of convincing evidence in the record of a persistent mental disorder lasting at least two years, coupled with no serious attempt at treatment or corresponding lifestyle adjustments.  *Id.*  The ALJ cites numerous

examples in the record demonstrating Plaintiff displayed normal attention, normal concentration, intact alertness, and no sign of neurological defects.  *Id.* at 26-27, 31 *citing id.* at 559, 734, 743.  The ALJ cited visits by Plaintiff to see doctors where Plaintiff's complaints of depression were addressed: a March 2017 visit to Dr. Harutyunyan who reported Plaintiff's depression to be successfully controlled with medication (*Id.* at 24 citing AR 419); a July 2018 visit to Dr. Magnus who reported Plaintiff's denial of any depression (*Id.* at 26 citing AR 759); a September 2018 visit to Dr. Magnus who noted Plaintiff's denial of depression (*Id.* citing AR 743); a March 2020 visit to Dr. Magnus who reported Plaintiff's denial of experiencing depression (*Id.* at 29 citing *id.* at 685); and numerous instances of primary care telemedicine notes taken from June to December 2020 where Plaintiff denied experiencing depression (*Id.* citing AR 627, 639, 648, 657, 664, and 673).

The ALJ's finding that Plaintiff's mental health impairment was not severe for purposes of calculating Plaintiff's RFC was appropriate under established law and does not serve as a basis to remand this case to the Commissioner.

Further, Plaintiff speculates that certain medications he took may have contributed to his depression and fatigue; but this is not evidence upon which an ALJ properly bases a decision on what does and does not constitute a severe medical impairment.  *See Rogers v. Astrue*, Case No. EDCV 09-584 JC, 2010 WL 3749286, at *6 (C.D. Cal. Sept. 21, 2020), *citing Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not err in failing to "explicitly address the drowsiness side-effect of [plaintiff's] medication" where the ALJ's residual functional capacity assessment accounted for "those limitations for which there was record support that did not depend on [plaintiff's] subjective complaints.").  In this case, the ALJ discusses at length Plaintiff's history of various prescribed medications and their effect on his health before and after the date last insured and how, in the vast majority of his consultations with medical professionals, Plaintiff denied having any discernible side effects from medications.  AR 23-30.  Of note is the ALJ's discussion regarding the medications proposed and prescribed by APRN Elder, which is cited by Plaintiff as support for the proposition that some of Plaintiff's medications might have been contributing to his depression and fatigue.  ECF No. 21-1 at 15.  At the appointment with APRN Elder in January 2020, Plaintiff stated he had no side effects to his current medication.  AR 29 *citing* AR at 594.

The Court finds the ALJ did not err in his finding that Plaintiff suffered from no severe mental health impairments for purposes of formulating Plaintiff's RFC.

**IV.     ORDER**

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 21) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 22) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court must enter judgment in favor of Defendant and close this case.

DATED this 8th day of March, 2023.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE